BOSCH MAGNETO COMPANY

*v.*

SAMUEL W. RUSHMORE.

[Submitted July 16th, 1915.   Decided October 13th, 1915.]

1. On a bill to specifically perform an agreement to give an indemnity bond, equity will not decide the extent of the indemnity, but will enforce the agreement in its own language and leave it to the law courts to pass upon, in an action for a breach of condition.

2. An action at law for damages for a failure to give an indemnity bond, does not furnish such complete and adequate remedy as will bar relief by specific performance.

3. Equity has jurisdiction to specifically enforce an agreement to give a bond *with surety* for the faithful performance of a contract.

4. Hardships fairly and voluntarily assumed as a part of the contract sought to be enforced, cannot prevail to stay a specific performance thereof.

<hr>

On final hearing on bill and answer.

*Messrs. McCarter & English,* for the complainant.

*Messrs. Vroom, Dickinson & Bodine, Mr. George C. Dean* and *Mr. Irving M. Obreight,* for the defendant.

BACKES, V. C.

This is a bill to specifically enforce an agreement to give a bond *with surety* for the faithful performance of a contract. The complainant purchased from the defendant his plant known

as the Rushmore Dynamo Works at Plainfield, including patents and patent rights, for the manufacture of automobile dynamos, engine-starters, &c., for $750,000, payable in three installments of $250,000. Before the contract of sale was entered into, the Bijur Motor and Lighting Company, the patentee of a starter, notified the complainant, in writing, that the patents of the defendant on a starter infringed the Bijur company patent and threatened suit. To protect the complainant against loss, it was stipulated in the agreement of sale, dated May 20th, 1914, as follows:

"It is further understood by and between the parties hereto that the party of the first part shall defend and save harmless to the extent of not more than one hundred thousand dollars ($100,000) the party of the second part from any suit that may be brought against the party of the second part within two years from this date by the Bijur Motor Lighting Company, for alleged infringement of Bijur patent No. 1,095,696 as threatened in a letter from the Bijur Motor Lighting Company's attorney, addressed to the party of the second part, dated May 8th, 1914; such liability not to extend beyond two years from this date.

"It is further understood and agreed by and between the parties hereto that when the full amount of the purchase-price shall have been paid as hereinafter mentioned, the party of the first part shall deliver to the party of the second part a bond of a responsible surety company of the amount of $100,000 to guarantee the faithful performance of his part of the defence of the above-mentioned threatened suit; that one of the conditions of said bond shall be that if within two years from May 20th, 1914, the Bijur patent is declared by any competent court to be invalid, or not infringed by the starter covered by the Rushmore patent above mentioned, or if the party of the second part herein shall become satisfied that there is no infringement of the Bijur patent by the said Rushmore patent, then the above-mentioned bond is to become null and void; that said bond shall contain a further condition that in the event of any such suit being threatened or commenced, the party of the second part shall, within two days from receipt of any such information, summons or other paper-writing of any kind, deliver same to the party of the first part, and that the party of the second part will give all assistance in his power in defending such suits or resisting such claim and upon failure to do so said bond shall be null and void."

The contract of sale has been executed in all its parts, with the exception of the giving of the bond. The defendant tendered a bond in the sum agreed upon, of a responsible surety company, conditioned that he will "defend the suit referred to, if instituted, and shall pay all fees of attorneys engaged by him

and court costs in connection therewith." This the complainant rejected, claiming that it is entitled to one conditioned that the defendant will defend and save harmless the complainant from any suit that may be brought against it by the Bijur company for the alleged infringement, and it now seeks to compel the execution of such a bond.

The principal dispute between the parties relates to the meaning to be given to the words "to guarantee the faithful performance of his part of the defence of the above-threatened suit," as set forth in the second paragraph above quoted, and both parties ask that this language be construed. If it were within the province of the court to decide the issue, I would be inclined to the view that it was the agreement of the parties that a bond was to be given to guarantee all of the undertakings of the defendant, as set forth in the first paragraph, and not merely to defend and pay the costs and expenses of the threatened litigation. It seems to me that the word "defence" has a broader significance than that attributed to it by the defendant, and that it was used in the sense of further protecting the complainant from that possible loss which the defendant in the first paragraph agreed personally to indemnify it against. Upon this question the court is not, however, required to render judgment. The parties have made their own agreement, and it is not for a court of equity to enlarge or contract its terms, as might be the case if the contention of either party were acceded to. "Equity may compel parties to perform their agreements when fairly entered into, according to their terms; but it has no power to make agreements for parties and then compel them to execute the same." *Hunt* v. *Rousmaniere's Administrators, 1 Pet. (U. S.) 1.* So, all that this court will do is to compel the giving of the bond in the terms employed by the contracting parties, and leave the extent of the liability thereunder for the law courts to pass upon in an action for a breach of condition. *Gough* v. *Williamson, 62 N. J. Eq. 526.*

But, the defendant urges that he ought not to be compelled to live up to his bargain, because the complainant has a complete and adequate remedy at law, and that, therefore, the extraordinary relief of specific performance should not be decreed. It is

true, as he contends, that there is no allegation in the bill of the defendant's financial irresponsibility, and it may be assumed that, at this time, he is able to respond for any damages that might be recovered in a suit on the Bijur patent. This, though, is not enough to relieve him, for the clear understanding of the parties was that for its indemnity the complainant was not to rely solely upon the personal assurances of the defendant, but that it was to have more in the shape of a pledge of a responsible surety for the performance of the obligation. When the contract was made, the complainant wanted to withhold $100,-000 of the consideration price, as indemnity, and upon objection, waived it and agreed to take in lieu the security of a bonding company. This security the complainant paid for and there is no good reason advanced why it should be withheld. The logic of Chancellor Bloomfield, in *Dean* v. *Anderson,* reported in *34 N. J. Eq. 496,* although that case involved a promise to give a mortgage upon land to secure a debt, is illustrative. He says: "A party requires security by mortgage because he is unwilling to trust to the personal responsibility of the person with whom he agrees, and to refuse him a remedy against the estate agreed to be mortgaged, is to deprive him of the principal security on which he relied, and to leave him to a remedy which he was unwilling to trust to, and which, in most instances, would not answer the justice of the case." In *Pember* v. *Mathers, 1 Brown Ch. 44,* Lord Thurlow decreed the specific performance of an agreement of an assignee of a lease to indemnify his assignor, the lessee, against all rents and to execute a bond for securing such indemnity. The declaration of Vice-Chancellor Pitney, in *Feigenspan* v. *Nizolek, 71 N. J. Eq. 382,* is, it appears to me, a complete answer to the position taken by the defendant. He says: "The policy of the law is that business men should keep their contracts, and not turn the contractee over to the uncertain remedy of an action at law for damages for * * * non-performance. It is, in my judgment, one of the most important functions of courts of equity to prevent injuries which result in damages, in all instances where it is practicable to do so, and the tendency is toward extending the protecting power of the court to cases not formerly thought to be sufficient to invoke its action.

For myself, I think this tendency is wholesome." "Specific performance of agreements," said Chief-Justice Fuller, in *Union Pacific Railway Co.* v. *Chicago, &c., Railway Co., 163 U. S. 564,* "prevents the intolerable travesty of justice involved in permitting parties to refuse performance of their contracts at pleasure by electing to pay damages for the breach." Now, in the case at bar, it is obvious that no more than nominal damages could be recovered at law for the failure to furnish the bond, and if judgment should be recovered against the complainant, and perchance the defendant should become reduced in circumstances, the remedy at law would be manifestly inadequate.

The next defence set up is that the court should not exercise its jurisdiction, because the agreement depends for its accomplishment upon the consent of a surety company, not a party to the contract or the suit. In support of this, the cases of *Public Service Corporation* v. *Hackensack Meadows Co., 72 N. J. Eq. 285,* and *Clark* v. *New Jersey Postal Telegraph Co., 82 N. J. Eq. 15,* are cited. Neither of these cases is in point. In the first named, Vice-Chancellor Leaming refused a decree to compel the vendor to convey a certain piece of land, of which he was not the owner, even though it appeared that he could purchase it at a reasonable price, and he puts his judgment upon the ground of want of inherent coercive force of the decree, the absence of mutuality of obligation, and mutual relationship, which the respective parties bear to the subject-matter of the contract. And, in the latter case, Chancellor Walker denied relief for want of ability of the defendant to carry out the decree. The features which characterized those cases are not present here. It was well known to the parties at the time they contracted, and it is common knowledge that bonds of the kind to be given may be purchased in the open market from scores of reputable bonding companies, and, in fact, in this case, the defendant furnished such a bond. Then, why should he be permitted to escape the performance of his contract? This is not a case where the performance of the contract depends upon the acquiescence of a particular third person, for in that case the court might decline to exercise its power, but one in which the enforcement of the decree operates upon a defendant capable of complying with its

mandate.  Sir John Leach, in *Walker* v. *Barnes, 3 Mad. 247,* points out the distinction.  In that case, the vendor of land lost his title deeds and agreed to give the purchaser real security against loss.  On a bill for specific performance of the agreement, the vendor set up that he had not sufficient real estate, and tendered ample personal security, but the vice-chancellor held that: "If a man agrees to give a real security for a demand, he may be obliged specifically to perform his agreement, though he had no real estate, because he may procure it.  It might be different where he agrees to give a security on an estate called A, of which he is not the owner, because he may be unable to procure that very estate; but where, as in this case, he agrees to give a real security generally, he has all the world before him, and must therefore purchase an estate to enable him to perform his agreement.  In the common case of a husband on marriage, covenanting to settle a real estate of a particular value on his wife and the issue of the marriage, if the husband has no real estate to settle, he is compellable to procure one."

The next point made by the defendant is that relief should be denied the complainant, because the giving of a bond would work a hardship to the defendant, in that he would be obliged to deposit with the surety company $100,000 in cash, or securities of that amount, or more.  The reply to this is that this is a burden which the defendant assumed when he made his contract.  Nor do I perceive that any great harm or embarrassment will befall him if he should be compelled to deposit with the bonding company collateral securities.  He would not be deprived of their increments.  Hardships, fairly and voluntarily assumed as a part of the contract which is sought to be enforced, cannot prevail to stay a specific performance, and this is emphatically laid down by the court of errors and appeals in the case of *Marvel* v. *Jonah, 83 N. J. Eq. 295,* in reversing the decree of this court, refusing to perform a negative covenant not to practice as a physician for a certain time, within a given district, Chief-Justice Gummere, in delivering the opinion of the court, saying: "But even if the deprivation should be as complete as the learned vice-chancellor seems to think it would, we see no injustice in compelling Dr. Jonah to live up to the covenant solemnly entered

into by him, and which was one of the causes inducing Dr. Marvel to admit him into partnership, and to a share in the benefits of the practice which he had built up. The fact that the performance of such a promise involves personal hardship, or pecuniary loss to the promisor, affords no justification for non-performance. If the law recognized such an excuse for the breach of a contract of this kind, very few cases would be found in the books where the performance of such negative covenants had been compelled by injunction; for, speaking generally, it is only where the performance of the covenant is disadvantageous to the covenantor that he refuses to perform it, and renders it necessary for the party for whose benefit it is made to apply to the courts for relief." See, also, *Chubb* v. *Peckham, 13 N. J. Eq. 207.*

Let a decree be entered directing the defendant to execute a bond according to the terms of the contract, with a condition in substantial compliance with its language. Inasmuch as nearly three-quarters of the period of indemnity has elapsed, and that the bringing of the Bijur infringement suit within that period is merely a possibility, the decree may provide that the bond be given within one day from the commencement of the suit. This may relieve the defendant from the payment of premium and the pledging of securities, and is fair and equitable under the circumstances.

The complainant is entitled to costs.