Rodríguez, Demandante y Apelante, *v.* Molero, Demandado y Apelado.

Apelación procedente de la Corte de Distrito de Arecibo en pleito sobre cumplimiento de contrato.

No. 2467.—Resuelto en marzo 16, 1922.

Compraventa—Defectos en el Título del Vendedor—Cumplimiento Específico.—Cuando los hechos demuestran, como en este caso, que el contrato de compraventa se llevó a cabo, la circunstancia de que el título del vendedor contuviera defectos que el comprador conocía al celebrarse el contrato no afectará al derecho de aquél a reclamar el cumplimiento específico.

Compraventa por Precio Aplazado en Parte—Derechos del Vendedor Cuando el Comprador no Cumple el Pacto de Garantizar el Precio Aplazado.— Probado que con el consentimiento de su esposa el comprador se obligó a garantizar con hipoteca de la finca comprada la parte de precio aplazado, el vendedor tiene derecho, si el comprador no puede constituir la hipoteca por la negativa de su esposa, a recobrar íntegro el precio de la venta.

Id.—Frutos.—Se presume que los frutos producidos por una finca que el vendedor se vió precisado a ocupar al ser abandonada por el comprador antes de pagar el precio son suficientes a compensar cualquier pérdida de intereses que el vendedor, quien reclama el cumplimiento del contrato, hubiera podido sufrir.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sr. L. Mercader* y *E. Marín.*

Abogado del apelado: *Sr. F. R. Flores.*

El Juez Asociado Sr. Wolf, emitió la opinión del tribunal.

Como muchos de los hechos aparecen en las alegaciones, pasamos a transcribirlos:

"Demanda.—A la Hon. Corte:—Comparece el demandante y por medio del abogado que suscribe a la corte respetuosamente expone:

"Primero: Que demandante y demandado son mayores de edad y vecinos de Utuado.

"Segundo: Que el demandante por sí y como apoderado de su esposa doña Ana Rosa Vargas, llevó a efecto un contrato privado de compraventa de una finca rústica con el demandado don Luis Mo-

lero Alvarez, cuyas estipulaciones se hicieron constar previo acuerdo de los contratantes en el siguiente documento que copiado literalmente dice así:

" 'Contrato privado de compraventa. Don Manuel Rodríguez y Rodríguez, casado con doña Ana Rosa Vargas Rodríguez, comerciante y propietario; y don Luis Molero Alvarez, casado con doña Francisca Pérez Villafañe, propietario; ambos mayores de edad y vecinos de Utuado, exponen como precedentes a un contrato de compraventa que tienen convenido, los siguientes hechos:—Primero: El señor Rodríguez manifiesta que es dueño en unión a su esposa de esta finca:—Rústica, sin nombre conocido, sita en el barrio de Vivi-Abajo, lugar denominado Los Fondos, término municipal de Utuado, compuesta de sesenta y cuatro y media cuerdas, igual a veinticinco hectáreas, quince áreas, cuarenta y seis centiáreas de terreno quebrado, de vega y con plantaciones de café plátano y frutos menores, conteniendo una casa para habitación. (Se describe la finca.)—Segundo: Que la adquirió por escritura ante el notario don Francisco Soto Gras, de San Juan, de fecha 6 de junio de 1917 y por compra a doña Marcolina, doña María del Carmen, doña María de la Encarnación, doña Ramona, doña Angela López Villamil y don Adolfo Alvarez Fernández, representados por don Rafael Fabián y Fabián e inscrita en cuanto a unos condominios a su favor, según resulta de las inscripciones 6ª. y 7ª., folios 41 y 42, finca número 3064, del Registro de la Propiedad del Distrito.—Cargas.—Esta finca según el título que tengo a la vista no tiene cargas.—Tercero: Que este contrato de compraventa se lleva a efecto bajo estas cláusulas:—Primera: Don Manuel Rodríguez y Rodríguez, por sí y como apoderado de su esposa prenombrada, lo que acreditará con la copia de la escritura de poder cuando fuere necesario, vende a don Luis Molero Alvarez el inmueble deslindado, mediante el precio de diez mil dólares ($10,000) del que confiesa recibido la mitad, aplazando el resto de cinco mil dólares ($5,000) a dos años, con opción a dos años mas, contados desde esta fecha, suma que devengará el interés del ocho por ciento (8%) anual pagaderos por mensualidades vencidas, pudiendo el deudor satisfacer antes del plazo concedido toda o parte de la suma adeudada, pero los pagos parciales que haga no bajarán nunca de mil dólares ($1,000).—Segunda: Hácese constar que esta finca está inscrita a nombre del vendedor en cuanto a unas participaciones o condominios indeterminados, según resulta de la escritura

que se ha mencionado y que para inscribirla en cuanto a todos los derechos cedidos al señor Rodríguez será necesario tramitar el correspondiente procedimiento judicial, por lo que el señor Molero no recibirá escritura pública hasta que el señor Rodríguez no obtenga un título eficiente para su inscripción, aclarándose que ninguna deficiencia en el título que pueda transmitirle el vendedor será motivo para que el adquirente pueda retener la cantidad aplazada ni parte de ella, respondiendo el señor Rodríguez solamente del saneamiento en caso de evicción y en la forma que determina el Código Civil.— Tercero: Consígnase además que don Carlos Cabrera Paz, colindante de esta finca, ha iniciado ante la Corte de Distrito de Arecibo procedimiento de deslinde judicial y que si por resultado de este deslinde la finca vendida quedare con menos o mayor cabida los contratantes no tendrán derecho a reclamación alguna por el exceso o falta de terreno.—Cuarta: Es convenido también que al otorgarse escritura de compraventa al señor Molero éste deberá constituir hipoteca voluntaria por la cantidad que quede adeudando más una suma adicional de doscientos cincuenta dólares ($250) para garantizar las costas, gastos, desembolsos y honorarios de abogado en caso de reclamación judicial.—Utuado, 1º. de septiembre de 1920.—(Hay dos rayas para las firmas, debajo de éstas dice 'contratantes.')—*Affidavit* No.——.—Suscrito ante mí por don Luis Molero Alvarez y don Manuel Rodríguez y Rodríguez, casados, propietarios mayores de edad, y vecinos de Utuado a quienes doy fe de conocer personalmente en Utuado, a———de septiembre 1920. (Hay una raya para la firma del notario.)'

''Tercero: Que el demandado alegando razones injustificadas y aclaradas al convenirse el contrato de compraventa, niégase a la celebración del mismo.

''Cuarto: Que el demandante ha cumplido y está dispuesto a cumplir todas las estipulaciones expresadas en el contrato de compraventa que se ha mencionado anteriormente.

''Por las razones expuestas de la Honorable Corte solicitamos que previos trámites de ley se dicte sentencia condenando al demandado al cumplimiento del contrato de compraventa en las condiciones expresadas en el mismo y al pago de las costas, gastos y desembolsos y honorarios de abogado del demandante.''

''Contestación a la demanda.—A la Honorable Corte:—Comparece ahora el demandado Luis Molero Alvarez por representación de

su abogado Francisco R. Flores y contestando la demanda en este caso respetuosamente alega:

"Primero: Que acepta el hecho primero de la demanda.

"Segundo: Que niega por ser falso, absolutamente falso la existencia del documento transcrito en el hecho segundo de la demanda, y que el demandado en ninguna forma ni en ningún momento haya consentido o haya autorizado a persona alguna para consentir en la redacción del documento transcrito en el hecho segundo de la demanda.

"Tercero: Que niega el hecho tercero de la demanda por cuanto el demandado en ninguna forma y bajo ningún pretexto ha alegado razones injustificadas para no consentir ni convenir, ni aceptar la oferta de venta que le hiciera el demandante con relación a la finca a que se refiere esta acción.

"Cuarto: No negamos pero tampoco admitimos la alegación cuarta de la demanda por cuanto no es cierto la existencia del contrato a que se refiere esta acción.

"Y como materia nueva de oposición a la demanda, el demandado alega:

"Primero: Que allá a fines del mes de agosto o alrededor de esa fecha el demandante hizo oferta de venta de la finca a que se refiere esta acción al demandado y en tal virtud el demandado estuvo sobre el terreno para ver y conocer dicha finca, y después el demandado quiso ver y conocer los documentos o titulación de dicha finca, encontrándose este demandado con que el demandante no tenía ningún título eficiente para su inscripción en el registro de la propiedad, y que no podía dicho demandante otorgarle al demandado una escritura pública que le garantizara la propiedad que iba a adquirir, y entonces el demandado así se lo manifestó al demandante no llegando a un acuerdo para el perfeccionamiento de contrato alguno.

"Por lo que se suplica a esta Honorable Corte que se sirva dictar una sentencia declarando sin lugar la demanda y condenando al demandante en costas, gastos, y honorarios de abogado."

La Corte de Distrito de Arecibo después de celebrado el juicio se expresó en estos términos:

"Del examen de los testigos y prueba documental producida por el demandante, considero que el contrato cuyo cumplimiento se soli-

cita no ha llegado a tener existencia jurídica, pues a través de la confusa prueba desarrollada, vislúmbrase solamente proposiciones verbales de una parte y otra sobre venta y adquisición de una finca, sin que en ningún momento aparezca, ni por parte del demandante ni por parte del demandado, la concurrencia mutua de ambos consentimientos en el precio y en la cosa, así como el de obligarse a la entrega de uno y otro respectivamente, requisitos necesarios y que deben probarse de manera clara y evidente para que pueda declararse la existencia del contrato. Artículos 1221 y 1228 del Código Civil.

"En el caso presente, a mi juicio, a juzgar por las pruebas, testifical o documental, sólo puede considerarse la existencia de una licitación o sea, promesa imperfecta, pero no de un contrato que según la precitada disposición legal gira sobre la base del consentimiento."

Del resto de la opinión aparece que la duda de la corte en cuanto al perfeccionamiento del contrato no dependió tanto del hecho de no haber habido concurrencia de voluntades entre las partes, sino de otras cosas, a saber, que la parte de la finca que iba a traspasarse no estaba inscrita en el registro de la propiedad, que con respecto a algunos de los condominios hereditarios que el demandante había comprado existía un pleito o pleitos para obtener un título inscribible, que existía un pleito pendiente con un vecino relacionado con las propuestas colindancias de uno de los condominios y al parecer, también, aunque en ello no se insistió tan fuertemente, que la esposa del comprador no había convenido en otorgar hipoteca sobre la finca que se pretendía traspasar como se describe en la demanda, y cuya oposición al contrato o especie de objeción la hizo el demandado en cartas que escribió al demandante.

Para entrar en el fondo de la cuestión debemos decir en seguida que la prueba nos convence de que las partes en este pleito habían llegado a un perfecto acuerdo sobre la venta de la propiedad y que la esposa del comprador con-

vino en constituir hipoteca.   En ninguna parte de la opinión manifiesta la corte tener duda acerca de la veracidad de los testigos y creemos en verdad que de los autos aparece que no surgió ninguna.   El demandante como testigo hizo una relación detallada del contrato hecho por él con el demandado, sosteniendo todas las alegaciones de la demanda y en sustancia todo aquello sobre lo cual declaró está corroborado por el notario en el caso quien también declaró.   Este notario fué elegido no por el vendedor sino por el comprador.   El demandante también ha sido corroborado por otro testigo, y por el silencio tanto del comprador como de su esposa que podían haber declarado como testigos, así como por las alegaciones.

Es un hecho sobre el que no hay disputa y aceptado por la corte inferior, que al demandado se le dió posesión de la finca, que estuvo en ella por catorce o quince días y entonces la entregó al demandante quien la aceptó para evitarse mayores perjuicios.   La prueba tiende también a acreditar que después de traspasar la posesión al demandado, el demandante sacó su ganado de la propiedad y el demandado utilizó y empleó los auxiliares de la finca que se encontraban en ella a quienes pagó el demandante al negarse el demandado a permanecer en la posesión material de la misma.

Si hubiera sido cierto que no hubo concurrencia de voluntades, que la Sra. Molero se negó a prestar su consentimiento al otorgamiento de la hipoteca, o si alguno de los referidos obstáculos que existían para el perfeccionamiento de un título inscrito eran óbice para la terminación del contrato, fácil hubiera sido ya al demandado o su esposa, haber declarado y negado las manifestaciones hechas por el demandante y el notario.   Estos dos testigos fueron sometidos al más riguroso examen de repreguntas por el juez, quien en su interrogatorio también demuestra al parecer que tenía cierta idea de que el hecho de no estar inscrito el título o

la pendencia de los pleitos tenía que ver con la existencia del contrato. La forma adecuada en que el apelado debió haber refutado las manifestaciones del demandante y sus testigos hubiera sido presentándose él mismo a declarar y quizá haciendo también que su esposa declarara. El hecho de dejarse voluntariamente de presentar prueba establece una fuerte presunción en contra de la persona que suprime dicha prueba, o lo que es igual, el no declarar. Artículo 102, párrafo 5 de la Ley de Evidencia; *Fajardo et al.* v. *Tió,* 17 D. P. R. 244.

Como hemos dicho, la prueba del demandante tiende a sostener todas las alegaciones de la demanda. Las partes habían convenido en todo aún en el importe de intereses sobre los pagos aplazados. Es cierto que en una de las cartas del demandado al demandante éste mostraba su inconformidad con el importe de los intereses, que el demandado quería fuera el seis por ciento y el demandante, según declaró, deseaba que fuese el nueve por ciento. Pero la prueba tiende a mostrar que el demandado renunció a la cuestión del importe de los intereses y aparece claramente el hecho de haber entrado él en posesión de la finca de acuerdo con su alegado contrato y que el demandante sacó su ganado después de haber escrito el demandado las referidas tres cartas.

La contestación del demandado bajo las reglas de alegaciones del código, admite los hechos de la demanda. El párrafo segundo no niega la existencia del contrato pero sí que el demandado hizo el documento transcrito en la demanda, o que autorizara a persona alguna para consentir en la redacción del documento. El párrafo tercero de la contestación niega que el demandado tuviera razones injustificadas para no aceptar el contrato, pero no niega que él hizo el contrato. El cuarto párrafo expresa una mera conclusión de derecho toda vez que dice que no fué cierta la exis-

tencia del contrato.  Dados los demás párrafos de la contestación *non constat* que el demandado haya podido creer que el contrato era inexistente por no haber él firmado en realidad un documento en tal sentido.  Y la nueva materia basa el motivo de la negativa en la falta de un título inscrito o de un título listo para ser inscrito.  Pero el comprador no negó que las partes llegaron a un acuerdo.

No insistiremos ahora demasiado en que no hay una contestación en que se nieguen todos los hechos de la demanda, pero somos de opinión de que esta contestación es completamente evasiva y no la franca exposición de una persona que quiere negar la existencia de un contrato.  Creemos que es una tentativa ingeniosa a fin de establecer una defensa a favor del demandado.

El apelante expresa que la corte al parecer se basó en algunas de las manifestaciones contenidas en la contestación como si fuera prueba.  La corte en verdad hace cita de los hechos de la contestación pero debemos dudar de si la corte realmente pudo haber considerado esta contestación como prueba, especialmente no habiendo sido jurada ninguna de las alegaciones.

El notario al ser interrogado por la corte por qué no dejó que las partes firmaran al venir ellos a su oficina en cierto día, manifestó que lo convenido era que ciertos condominios hereditarios debían inscribirse antes de que la escritura fuese redactada, y que antes de que las partes firmaran dicha escritura él deseaba que estos condominios hereditarios fueran inscritos.  Estos condominios en realidad se inscribieron algunos días después de haberse reunido las partes en la oficina del notario.  Eran títulos perfectamente inscribibles como aparecía de la prueba.  De modo que las únicas cuestiones que eran algo dudosas fueron los pleitos pendientes para obtener las escrituras de otros condominios y también la de la colindancia con Carlos Cabrera.  El deman-

dante declaró que fué un pleito iniciado para establecer la colindancia por dicho Carlos Cabrera de acuerdo con la parte contraria. Se demostró asimismo que el demandante estaba en posesión de todos los condominios de los bienes, para los cuales tenía necesidad de escrituras a los fines de la inscripción. No puede existir duda alguna en vista de los autos de que el demandado conocía todos estos defectos, que convino en tomar la propiedad a pesar de los mismos y que realmente entró en posesión de la finca. Bajo estas circunstancias no vemos razón por la cual no deba decretarse el cumplimiento específico del contrato.

Si un comprador puede obtener sustancialmente lo que se le ha prometido puede ser compelido a aceptarlo. Artículos 1354, 1353 y 1091 del Código Civil; 10 Manresa 70, 71; 23 Scaevola, página 111. De las anteriores autoridades resulta claro el hecho de que los defectos pequeños del título, o las omisiones de poca importancia en la descripción no afectarán al derecho de un vendedor a insistir en el cumplimiento específico y que si es necesario debe decretarse una compensación a favor del demandado. En este caso no es necesaria ninguna compensación toda vez que las partes estuvieron perfectamente de acuerdo en cuanto a la cosa traspasada y el demandado realmente fué puesto en posesión de la misma. Las cortes de los Estados Unidos van más lejos y dicen que cuando el dar un buen título depende de la voluntad de otra persona, ese hecho no importa si puede obtenerse el consentimiento de dicha tercera persona. *Jacobson* v. *Rechnitz,* 46 N. Y. Misc. 135; *Lyman* v. *Gedney,* 29 N. E. 282, 288; *Rice* v. *Theimer et al.,* 146 Pac. 702; *Bosch Magneto Company* v. *Rushmore,* 95 Atl. Rep. 614, donde también se dijo que los inconvenientes razonables y voluntariamente asumidos como parte del contrato que se pretende hacer cumplir no pueden prevalecer para impedir su cumplimiento específico. *Citronelle Turpentine Company* v. *Buhlig,* 63 So. 952.

Del examen de estas autoridades y otras aparece que el cumplimiento específico siempre será decretado prácticamente por cualquier corte donde quiera que es equitativo y justo el hacerlo así, empezando por la Instituta de Justiniano, Libro 3, Título 23, párrafo 1. Y un caso citado en relación con esto es el de *Hepburn* v. *Auld*, 5 Cranch. 262, opinión del Juez Presidente Sr. Marshall.

La prueba tiende a mostrar que la Sra. Molero efectivamente convino en el contrato y también que Molero tenía un poder de ella. Ninguno de estos hechos fueron negados. La señora Molero sin embargo no es parte en el pleito. Tal vez la corte tiene facultades, de acuerdo con el artículo 36 del Código de Enjuiciamiento Civil para hacer que ella muestre causa por qué no debe cumplir con el contrato, pero tal procedimiento es innecesario en este caso. El demandado convino en pagar $10,000 y constituir hipoteca por $5,000 por el precio aplazado de venta. Si el demandado no puede otorgar una hipoteca completa por la negativa de su esposa, entonces dentro de las circunstancias, aún podía exigírsele que compre la finca pues no tenemos duda de que la señora Molero consintió en constituir la hipoteca. El incumplimiento fué del demandado y si no se constituye una hipoteca el demandante tiene derecho a recobrar todo el precio de la venta.

La prueba tiende a mostrar que el demandante está realmente en posesión de la finca, negándose el demandado a quedar en la posesión de la misma, y se presumirá que los frutos y productos de dicha finca fueron suficientes para atender cualquier pérdida de intereses que el demandante haya podido sufrir.

Habiendo llegado a la conclusión de que la corte cometió error al no decretar el cumplimiento específico en favor del vendedor, debe revocarse la sentencia apelada que dictó la Corte de Distrito de Arecibo en febrero 23, 1921, y en su lugar pronunciarse otra declarándose válido y perfecto el

contrato celebrado entre las partes y por virtud del cual el demandante vendió al demandado y éste compró al demandante la finca en cuestión, y dentro de diez días de registrada la sentencia en este caso en la corte inferior el demandante deberá entregar o dejar a la libre disposición del demandado la finca y el demandado satisfará al demandante la suma de diez mil dólares en pago de la misma, cinco mil de contado y cinco mil dentro del plazo de dos años, con intereses al ocho por ciento anual, constituyendo el demandado hipoteca sobre la finca vendida para garantir la parte del precio que queda aplazada, debiendo las partes otorgar la correspondiente escritura. Y si el demandado no pudiere constituir válidamente la expresada hipoteca entonces vendrá obligado a pagar de contado todo el precio dentro de dicho plazo de diez días de registrada la sentencia y desde el momento que el demandante entregue o deje a su libre disposición la finca. La dilación en el pago llevará consigo intereses al ocho por ciento anual. Una vez que transcurra el plazo fijado y el demandante entregue o deje a disposición del demandado la finca de que se trata, si el demandado se negare a pagar el precio convenido, podrá hacerse efectiva la sentencia en cualquier bien del demandado, incluso la propia finca vendídale, debiendo librarse ejecución para satisfacer la sentencia, quedando facultada la corte de distrito para dictar las medidas que juzgue necesarias al mejor cumplimiento de la misma, debiendo cada parte pagar sus costas.

> *Revocada la sentencia apelada, cada parte pagando sus costas.*

Jueces concurrentes: Sres. Presidente del Toro y Asociados Aldrey y Hutchison.